IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BRANDON GROSSINGER,                     :
    Plaintiff,                         :
                                       :
    v.                                 :         CIVIL ACTION NO. 26-CV-2601
                                       :
APRIA HEALTHCARE LLC, *et al.*,         :
    Defendants.                        :

**MEMORANDUM**

**BEETLESTONE, C. J.**                                      **JUNE 1 , 2026**

Brandon Grossinger filed this *pro se* case asserting claims under the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act ("RA"), and the anti-discrimination provision of the Affordable Care Act ("ACA"). Named as Defendants are Apria Healthcare LLC ("Apria"), the Trustees of the University of Pennsylvania d/b/a/ PENN Medicine ("Penn"), PENN Medicine Doylestown Health ("Doylestown"), Amerihealth Caritas/Keystone First, and "John/Jane Does 1-20." Grossinger also seeks leave to proceed *in forma pauperis* and has filed several motions for temporary restraining orders. The Court will grant Grossinger leave to proceed without paying the fee for this case. Because his claims are not plausible, the Amended Complaint will be dismissed and his motions for injunctive relief will be denied since he cannot show the likelihood of success on the merits of his claims.

I.        **FACTUAL ALLEGATIONS**[1]

---

[1] Grossinger's original Complaint (ECF No. 1), filed on April 20, 2026, was not screened because he failed to pay the filing fee for this case or seek leave to proceed *in forma pauperis*. In response to an Order filed on April 21, 2026 (ECF No. 5), Grossinger submitted an application to proceed *in forma pauperis* as well as a new version of his pleading on May 20, 2026. (ECF Nos. 7, 8.) The factual allegations set forth in this Memorandum are taken from the Amended Complaint (ECF No. 8) because, once submitted, it supersedes the earlier version, making it the operative pleading in this case. *Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019). The

Grossinger asserts he has "documented disability-related limitations affecting cognition, fatigue, pain, executive function, neurological processing, stress tolerance, and communication during medical flares" caused by sleep apnea, tinnitus, and Lyme disease.  (Am. Compl. at 2.) As best the Court can understand his pleading, this case involves his efforts to gather records about a recalled CPAP device.  He had been supplied with a Philips Dream Station CPAP "through the provider / DME / insurance chain" that he used for three years.  (*Id*. at 3.)  While unclear, the machine appears to have been recalled and a September 2025 Penn Sleep record "documented his concern that a replacement Philips machine appeared to carry the same serial number as the original machine and had a refurbished sticker." (*Id*.)  A "later different CPAP machine appeared in records or was supplied after he raised safety, records, and chain-of-command concerns" but Grossinger has been unable to obtain records about who ordered it, approved it, what was delivered, who signed for it, and what serial number it carried.  (*Id*.)  He appears to dispute whether the replacement was actually a replacement and he does not feel it is medically safe to use given the gap in records.  (*Id*.)  His Amended Complaint contains allegations about how he unsuccessfully attempted to obtain information and records about the replacement machine (*id*. at 3-4), including that he "sent ADA/504 and medical-records demands seeking full sleep-machine records" and requested preservation of communications and record histories.  (*Id*. at 4.)  He claims he will suffer irreparable harm because the disputed records "affect present medical safety," he cannot safely evaluate whether to use his current CPAP machine, and he is forced to choose between using a device "he does not trust," not using it despite his sleep apnea, or "attempting to self-reconstruct a medical-device record across

---

Court adopts the sequential pagination assigned to the Amended Complaint by the CM/ECF docketing system.

multiple institutions while disabled." (*Id.*)  He seeks identification and preservation of the records.  (*Id.* at 5-6.)

## II.      STANDARD OF REVIEW

The Court grants Grossinger leave to proceed *in forma pauperis*.  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Amended Complaint if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021).  Although this "plausibility standard is not akin to a 'probability requirement,'" it demands "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 566 (2007)).  At this early stage of the litigation, the Court will accept the facts alleged in the Amended Complaint as true, draw all reasonable inferences in the Grossinger's favor, and ask only whether the Amended Complaint contains facts sufficient to state a plausible claim.  *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.

The Court construes *pro se* allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021).  However, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Id.* (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013)).  ).  An unrepresented litigant "cannot flout procedural rules — they must abide by the same rules

3

that apply to all other litigants." *Id.* (quoting *Mala*, 704 F.3d at 245); *see also Doe v. Allegheny Cnty. Hous. Auth.*, No. 23-1105, 2024 WL 379959, at *3 (3d Cir. Feb. 1, 2024) (*per curiam*) ("While a court must liberally construe the allegations and 'apply the applicable law, irrespective of whether the pro se litigant mentioned it b[y] name,' *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002), this does not require the court to act as an advocate to identify any possible claim that the facts alleged could potentially support.").

## III.    DISCUSSION

### A.    ADA Claims

The ADA has four subchapters, covering employment, public services, public accommodations and services operated by private entities, and "miscellaneous." *See generally* 42 U.S.C. §§ 12101-12203. Since each of the named Defendants appears to be a private entity, any claim under the statute would fall under Title III, *see id*. § 12181(6) (defining the term "private entity" to mean "any entity other than a public entity (as defined in section 12131(1) of this title" (*i.e.*, a state or local government or Amtrak)). Private entities are barred from discriminating on the basis of disability in the full and equal enjoyment of goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation. *Id*. § 12182(a). A "public accommodation" includes establishments such as hotels, restaurants, theaters, retail stores, service provider locations such as laundromats and pharmacies, museums, schools, day care or senior centers, and places of exercise or recreation. *Id*. § 12181(7). Acts of discrimination include, for example, imposing eligibility criteria that tend to screen out an individual with a disability, failing to make reasonable accommodations, failing to take steps to ensure that no disabled person is excluded, denied services, segregated or otherwise treated differently, and failing to remove barriers. *Id*. § 12182(b)(2). The ADA defines disability as

4

"(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment (as described in paragraph (3))." *Id*. § 12102(1). "Major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id*. § 12102(2)(A).

To state a plausible claim under ADA Title III, courts hold that a plaintiff must allege facts that satisfy three elements: (1) the plaintiff has a disability; (2) the defendant owns, leases, or operates a place of public accommodation; and (3) the defendant discriminates against the plaintiff in connection with that public accommodation based on the plaintiff's disability. *See e.g.*, *Hernandez v. El Pasoans Fighting Hunger*, No. 22-50240, 2022 WL 18019437, at *3 (5th Cir. Dec. 30, 2022) (citing *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007)); *Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1231 (11th Cir. 2021); *Mershon v. St. Louis Univ.*, 442 F.3d 1069, 1076 (8th Cir. 2006); *McNeil v. Time Ins. Co.*, 205 F.3d 179, 186 (5th Cir. 2000); *Sharrow v. Bailey*, 910 F. Supp. 187, 191 (M.D. Pa. 1995). Assuming for purposes of screening the Amended Complaint that Grossinger is a person with a disability, it is unclear that he has alleged that the named Defendants provide a place of public accommodation, and he clearly fails to allege that any Defendant discriminated against him based on his disability in the provision of a public accommodation or of a service.[2]

---

[2] Notably, § 12182(a) lists goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation in the disjunctive. Accordingly, the Court deems Grossinger's claim to arise under either provision and will consider the provision of public accommodation element and the provision of a service element in screening the Amended Complaint.

The Court notes that Grossinger's Amended Complaint is not clear on whether any Defendant can be deemed to provide a place of public accommodation since Grossinger does not specifically allege facts about this element.  Rather, he alleges that the University of Pennsylvania Health System / Penn Medicine operates "clinical, sleep-medicine, portal, health-information, patient-affairs, and administrative *systems*."  (Am. Compl. at 2 (emphasis added).) The Trustees of the University of Pennsylvania is named because it is an entity associated with Penn Medicine's "operations, funding, records, and institutional control." (*Id*.)  Doylestown Health allegedly operates Grossinger's "primary-care and charting *environment*," Apria Healthcare LLC supplied or was responsible for supplying CPAP equipment and AmeriHealth Caritas / Keystone First is a health insurer involved with the records dispute.  (*Id*. (emphasis added).)

Nowhere does Grossinger allege that an event occurred at a *physical* place of public accommodation where he suffered disability discrimination.  Rather, he appears to have interacted with all of the Defendants electronically but that is not entirely clear from the Amended Complaint.[3]  Courts are split on the question of whether the term "public accommodation" requires a physical place or location.  *See Peoples v. Discover Fin. Servs., Inc.*, 387 F. App'x 179, 183 (3d Cir. 2010) (describing split amongst the courts of appeals).  Some courts apply the ADA to a good or service regardless of whether the service or privilege is connected to a physical location.  *See*, *e.g.*, *Carparts Distribution Ctr., Inc. v. Auto. Wholesaler's Ass'n of New England*, 37 F.3d 12, 19 (1st Cir. 1994) (finding that establishments of "public accommodation" are not "limited to actual physical structures").  These courts generally invoke

---

[3] Attached to the Amended Complaint are numerous emails, screen shots of text messages, and AI excerpts.  (Am. Compl. at 9-14.)

Congress's intent to ensure that people with disabilities have access to the same services enjoyed by people who are not disabled. *See Morgan v. Joint Admin. Bd., Ret. Plan of the Pillsbury Co. & Am. Fed'n of Grain Millers, AFL-CIO-CLC*, 268 F.3d 456, 459 (7th Cir. 2001) ("The site of the sale is irrelevant to Congress's goal of granting the disabled equal access to sellers of goods and services.").

But the United States Court of Appeals for the Third Circuit, among other courts, has concluded that an actual, physical location is necessary. *See*, *e.g.*, *Ford v. Schering-Plough Corp.*, 145 F.3d 601, 612 (3d Cir. 1998) ("The plain meaning of Title III is that a public accommodation is a place. . . ."); *see also Peoples*, 387 F. App'x at 183 ("Our court is among those that have taken the position that the term ["public accommodation"] is limited to physical accommodations."). These courts reason that all of the entities enumerated as examples of public accommodations in 42 U.S.C. § 12181(7), hotels, restaurants, theaters, laundromats, and the like, refer to physical places. *See Ford*, 145 F.3d at 612 (noting that requiring a physical location "is in keeping with the host of examples of public accommodations provided by the ADA, all of which refer to places"). Even though a physical place or location is required, the Third Circuit has held that a good or service provided by a public accommodation can be covered by the ADA as long as there is "some nexus between the services or privileges denied and the physical place. . . ." *Menkowitz v. Pottstown Mem'l Med. Ctr.*, 154 F.3d 113, 122 (3d Cir. 1998).

Thus, for example, this Court has interpreted the Third Circuit's instruction that public accommodations are limited to physical places (or services with a nexus to a physical location) to mean that a website, on its own, is *not* a public accommodation within the meaning of the ADA. *See*, *e.g.*, *Mahoney v. Bittrex, Inc.*, No. 19-3836, 2020 WL 212010, at *2 (E.D. Pa. Jan.

14, 2020) ("A website, by itself, is not a physical location and therefore does not constitute a place of public accommodation under Section 12182(a) of the ADA."); *Walker v. Sam's Oyster House, LLC*, No. 18-193, 2018 WL 4466076, at *2 (E.D. Pa. Sept. 18, 2018) ("A website is not a physical location and therefore does not constitute a place of public accommodation under Section 12182(a) of the ADA."); *see also Tawam v. APCI Fed. Credit Union*, No. 18-122, 2018 WL 3723367, at *6 (E.D. Pa. Aug. 6, 2018) (citing statutory definition of "public accommodation" in support of conclusion that the defendant's physical location, rather than its website, was the place of public accommodation).  Since Grossinger appears to allege that he interacted with all Defendants through web portals or other electronic means and fails to allege any nexus between the services or privileges denied and a physical place, the public accommodation element has not been alleged plausibly.

Grossinger also fails to allege that any Defendant acted or refused to act because he is disabled, whether his claim is based on the provision of a public accommodation, the provision of a service, or otherwise.  He only makes an undeveloped assertion that he "raised" his sleep apnea and other symptoms "over multiple years" (Am. Compl. at 2), and invoked "ADA/504" in making his medical records demands, (*id*. at 4).  Stated simply, Grossinger's core dispute with the Defendants over their retention and preservation of records is a dispute that any person might have with a provider of a good or service regardless of a disability and Grossinger does not plausibly allege that he has been subject to discrimination *because of* his disability.  *See*, *e.g.*, *Randolph v. Turgeon*, No. 21-316, 2022 WL 22209559, at *7 (M.D. Pa. May 5, 2022), *report and recommendation adopted*, 2022 WL 22001377 (M.D. Pa. June 9, 2022) ("And while Plaintiff claims to have disabilities, having a disability concurrently with an adverse event is not enough to state a plausible ADA claim.").  As such, Grossinger also fails to allege the third

element of a Title III claim whether based on the provision of a service or a public accommodation.  *See*, *e.g.*, *Riboldi v. Warren Cnty. Dep't of Hum. Servs. Div. of Temp. Assistance & Soc. Servs.*, 781 F. App'x 44, 46 (3d Cir. 2019) (affirming district court dismissal of ADA claim where plaintiff "failed to allege facts plausibly indicating that he was denied benefits or services *on account of* his disability"); *Lewis v. Adirondack Med. Ctr.*, No. 24-376, 2024 WL 4448870, at *3 (N.D.N.Y. Oct. 9, 2024) ("[N]owhere in the complaint does Plaintiff suggest he did not receive Lake Placid Sports Medicine, PLLC's services *because of a disability* or that he was otherwise discriminated against on this basis"); *Brennan v. NCAComp Inc.*, No. 22-127, 2022 WL 4290660, at *8 (N.D.N.Y. Apr. 25, 2022), *report and recommendation adopted*, 2022 WL 3097843 (N.D.N.Y. Aug. 4, 2022) ("The Amended Complaint does not allege facts plausibly suggesting that Defendants' actions constituted discrimination under Title III of the ADA or resulted in the discriminatory provision of services to Plaintiff.  Although the Amended Complaint appears to allege that: (1) Defendant NCAComp denied Plaintiff's claims in an effort to save money," it does not "allege that Defendants took these actions for the purpose of discriminating against Plaintiff because of an alleged disability."); *Marshall v. Alabama Coll. of Osteopathic Med.*, No. 18-631, 2018 WL 4955211, at *3 (M.D. Ala. Oct. 12, 2018) (dismissing Title III claim where plaintiff failed to allege facts that defendant "knew about any alleged disability such that it could have engaged in discriminatory conduct under the ADA"); *J.A.M. v. Nova Se. Univ., Inc.*, 646 F. App'x 921, 926 (11th Cir. 2016) ("J.A.M. did not allege that he was dismissed because of his mental disability.  Rather, he alleged that he was dismissed because he breached his agreement to abstain from alcohol consumption.  At best, Nova discriminated on the basis of J.A.M.'s alcohol-related behavioral misconduct, not his disability. As such, J.A.M. failed to allege that Nova discriminated against him on account of his disability

and, therefore, failed to state a claim under Title III."); *Tasambasis v. Pac. Aerospace Mach., Inc.*, No. 14-457, 2014 WL 12603098, at *1 (C.D. Cal. Apr. 4, 2014) (plaintiff's failure to allege he was denied access to any place of public accommodation on account of a disability rendered Title III claim implausible); *see also*, *Thomas v. Murphy Oil Corp.*, 777 F. App'x 377, 380 (11th Cir. 2019) ("Plaintiff's bare conclusory allegations that Defendants discriminated against him based on his race or disability is not enough to avoid dismissal."); *Chavous v. Hous. Visions Unlimited, Inc.*, No. 22-811, 2022 WL 9967833, at *4 (N.D.N.Y. Oct. 17, 2022), *report and recommendation adopted*, 2023 WL 1775699 (N.D.N.Y. Feb. 6, 2023) ("Here, the complaint does not allege facts plausibly suggesting that Defendants' actions constituted discrimination under Title III of the ADA or resulted in the discriminatory provision of services to Plaintiff. Thus, Plaintiff has failed to state a claim upon which relief may be granted pursuant to Title III of the ADA."). Accordingly, the Title III claims are dismissed.

**B.      Section 504 Claim**

While ADA Title III prohibits places of public accommodation from discriminating against individuals with disabilities in connection with goods, services, facilities, privileges, advantages or accommodations, Section 504 of the RA prohibits disability discrimination in "any program or activity receiving Federal financial assistance." *Bittenbender v. Fam. Servs. Ass'n of Bucks Cnty.*, No. 25-5920, 2026 WL 561128, at *8 (E.D. Pa. Feb. 26, 2026) (citing *Pedro v. Hilton Worldwide, Inc.*, No. 24-5725, 2025 WL 220023, at *6 (E.D. Pa. Jan. 16, 2025) and 29 U.S.C. § 794(a)). "To state a claim under § 504, a plaintiff must demonstrate that: (1) [he] is a qualified individual with a disability; (2) [he] was denied the benefits of a program or activity of a public entity which receives federal funds; and (3) [he] was discriminated against based on h[is] disability." *Giterman v. Pocono Med. Ctr.*, 361 F. Supp. 3d 392, 409 (M.D. Pa. 2019)

10

(quoting *Reed v. Schuylkill Health Sys.*, 2013 WL 6479127, *3 (M.D. Pa. Dec. 9, 2013)). Grossinger fails to allege the third element of a Section 504 claim for the same reasons he failed to allege the element with regard to his ADA claim: he has not provided facts that any Defendant acted or refused to act because he is disabled.  He also fails to allege that any Defendant is a recipient of federal funds even though he acknowledges the element in his Amended Complaint. (Am. Compl. ¶ 52 ("Section 504 of the Rehabilitation Act and Section 1557 of the Affordable Care Act prohibit disability discrimination and denial of meaningful access in covered healthcare programs receiving federal financial assistance.")).  The Section 504 claim is also, therefore, dismissed.

### C.      Affordable Care Act Claim

Section 1557 of the ACA prohibits an individual from being "excluded from participation in, [ ] denied the benefits of, or [ ] subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance."  42 U.S.C. § 18116(a).  In order to carry out the goal of the statute, § 1557 "expressly incorporates four federal civil rights statutes and includes the kind of rights-creating language found in those statutes." *Se. Pa. Transp. Auth. v. Gilead Scis., Inc.*, 102 F. Supp. 3d 688, 698 (E.D. Pa. 2015).  The only statute relevant here is 29 U.S.C. § 794 prohibiting disability discrimination "under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service."  Because, as noted, Grossinger fails to allege that any Defendant is a recipient of federal financial assistance, his claim under the ACA is also not plausible.  Moreover, he does not explain how his trouble in marshaling documents about his CPAP equipment plausibly establishes that he has been excluded from, been denied the

11

benefits of, or discriminated against in regard to a health program or activity.  The ACA claim is also dismissed.

### D.      Relief Sought and Rule 27

Moreover, Grossinger's attempt to obtain the requested injunctive relief – namely, the prelitigation preservation of records involving his defective CPAP equipment – would be improper even if he had alleged the elements of one of his claims.  Reading his Amended Complaint liberally, Grossinger's core dispute appears to be over an allegedly defective CPAP machine.  This case was brought against the custodians of records related to the CPAP equipment in an attempt to obtain and secure them in order to investigate and/or prove that claim.  But it is axiomatic that a party is generally not entitled to discovery before an action is brought.  *See*, *e.g.*, *United States v. Cuya*, 964 F.3d 969, 973 (11th Cir. 2020) ("in civil cases generally, a party is not entitled to discovery before an action is brought – indeed, he may not seek discovery until after he has not only filed a complaint, but a well-pleaded one" (citing *Iqbal*, 556 U.S. at 678-79)); *see also Application of Eisenberg*, 654 F.2d 1107, 1112 (5th Cir. 1981) ("A person contemplating litigation has no absolute entitlement to early discovery. . . ."); 8A Wright & Miller's Federal Practice & Procedure § 2071 n.5 (3d ed. 2026) ("The type of fishing which the rules do not tolerate is fishing before action to try to discover some ground for bringing suit. No discovery process can be used by the plaintiff before he has filed his complaint, and the provisions for perpetuating testimony are not designated for discovering grounds for bringing action but only for perpetuating evidence already known." (quotation omitted)); *Brown v. Crews*, No. 13-36, 2015 WL 736191, at *5 (M.D. Fla. Feb. 20, 2015) ("The problem with this contention, of course, is that it puts the discovery cart before the pleading horse.").

Nor can the Amended Complaint, seeking digital records, be liberally construed as a petition pursuant to Federal Rule of Civil Procedure 27.  Rule 27 provides only for the perpetuation of *oral testimony* that is at risk of becoming unavailable due to some issue with the witness.  Rule 27(a)(3); *see VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1319 (Fed. Cir. 2014) ("This rule gives district courts the authority to grant a petition authorizing a deposition to perpetuate testimony even before a lawsuit has been brought, and also applies when a case is otherwise stayed.").  It is not a substitute for regular order discovery in an underlying law suit.  *See also Ash v. Cort*, 512 F.2d 909, 913 (3d Cir. 1975) ("appellant misperceives Rule 27 as a substitute for general discovery").  Rather, it is a device used when a witness's oral testimony is in danger of being lost.  *Penn. Mut. Life Ins. Co. v. U.S.*, 68 F.3d 1371, 1375 (D.C. Cir. 1995) (holding that a general allegation that witness is retired or old is not sufficient to satisfy Rule 27's requirement that a petitioner demonstrate an immediate need to perpetuate testimony); 8A Wright & Miller's Federal Practice And Procedure § 2072 (3d ed. 2026) ("it must appear that there is danger of loss of testimony").

## IV.    CONCLUSION

For these reasons, the Amended Complaint will be dismissed on statutory screening because Grossinger's claims under the ADA, Section 504, and the ACA are not plausible.  Given that the only stated relief he seeks on those claims is also not proper, the Court concludes that any attempt at amendment would be futile.[4]  Accordingly, the dismissal will be with prejudice. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002) (stating that district courts should dismiss complaints on statutory screening with leave to amend "unless amendment

---

[4] Because Grossinger cannot demonstrate the likelihood of success on any of this claims, his motions seeking temporary restraining orders will be denied. *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008); Fed. R. Civ. P. 65.

would be inequitable or futile.").  An Order of dismissal will be entered separately.  Fed. R. Civ.

P. 58(a).

**BY THE COURT:**

**S/ WENDY BEETLESTONE**

_____

**WENDY BEETLESTONE, C.J.**